**NOT FOR PUBLICATION**                                          [86, 87]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                          :
ROBERT VUKOVICH,                          :          Civil Action No. 03-737
                                          :
        Plaintiff,                        :          **OPINION**
        v.                                :
                                          :
HAIFA, INC.; HAIFA NEW YORK, INC;         :
and STEWART CORWIN,                       :
                                          :
        Defendants.                       :
_____:


**WOLFSON, UNITED STATES DISTRICT JUDGE**

Presently before the Court are cross- motions for partial summary judgment by Plaintiff

Robert Vukovich ("Vukovich"), and Defendants Haifa, Inc. ("Haifa Inc."), Haifa New York, Inc.

("Haifa NY"), and Stewart Corwin ("Corwin").  This matter arises out of an agreement between

Haifa, Inc. and/or Haifa NY (collectively, "Haifa") to supply Plaintiff with Jerusalem limestone

for use in the construction of a residence in Colts Neck, New Jersey.  Specifically, Plaintiff asks

that this Court grant Summary Judgment on his Breach of Contract claim (Count 1) and on his

Consumer Fraud claim (Count 5) and that the Court dismiss Plaintiff's Counterclaim for

anticipatory breach.  Defendants, on the other hand, request Summary Judgment in their favor on

Plaintiff's claims for Common Law Fraud (Count 3) and Consumer Fraud (Count 5) against both

1

the Haifa Defendants and Corwin, individually. The Court has considered the moving, opposition, and reply papers, and for the reasons set forth below, Plaintiff's motion for partial summary judgment is granted in part and denied in part.  Specifically, I am denying Plaintiff's motion for summary judgment on the breach of contract claim and on the consumer fraud claim; however, Plaintiff's motion on Defendants' counterclaim is granted.  In addition, I am granting in part and denying in part Defendants' Motion for Summary Judgment.  I find that issues of material fact remain regarding the fraud and consumer fraud claims against the Haifa Defendants, and thus Defendant's Motion as to the Haifa Defendants is denied; however, Corwin's Motion for Summary Judgment on both the fraud and consumer fraud claims is granted.

## I.   Background

 Haifa, Inc. and Haifa New York, Inc. are companies that sell, install, and fabricate products made of stone, including Jerusalem limestone.  Corwin Dep. 23-26, 30.  Stewart Corwin is the president and a one-third shareholder of both Haifa, Inc. and Haifa New York, Inc.  Id. at 141-42; Keogh Dep. 8-9.  Haifa typically purchases blocks of stone from quarries in Israel for custom orders and ships them to facilities in Italy for fabrication.  Def's Fact Statement ¶8. Neither Haifa, Inc. nor Haifa New York, Inc. own any stone quarries.  Id. at 24, 84.

The instant dispute arises out of an agreement between Plaintiff and Haifa pursuant to which Plaintiff was to purchase Jerusalem limestone products from Haifa for use in the construction of a residence in Colts Neck, New Jersey.  Plaintiff's initial contact with Haifa

occurred in 2000 when he met Elliot Hindman ("Hindman") at Haifa's New York showroom.[1]

Vukovich Dep. 38.  During this meeting, Plaintiff and Hindman discussed the Jerusalem

limestone that Haifa could obtain for Plaintiff.  Id.  Although disputed by Defendants, Plaintiff

also contends that during this meeting Hindman represented that Haifa owned its own quarries,

and that stone would be obtained from these quarries upon receipt of a deposit.  Plaintiff's

Interrogatory Responses at 9.  Plaintiff and Haifa did not sign a written contract at the meeting,

however, several months later, Plaintiff and Hindman agreed that Plaintiff would purchase

Jerusalem limestone products from Haifa. Vukovich Dep. 46:3-6, 52:11-14.  Indeed, Plaintiff

explained that although there is "no written document titled 'contract' between the parties which

is signed by the Plaintiff," he had accepted "the written and verbal representations, promises and

agreements of the Haifa Defendants, particularly as presented by Elliot Hindman.  The attached

documents, among others, represent the written culmination of the things that Hindman promised

that the Haifa Defendants would produce, and the price that Plaintiff would be charged."  Regan

Cert., ex. I, Pl's Supplemental Interrogatory Answer No. 3.

Thereafter, on November 18, 2000, Plaintiff entered into the first of the following four

purchase order agreements with Haifa[2];

- Purchase Order 1, dated November 18, 2000, for $1,197,028.25 in Jerusalem limestone products. Regan Cert., ex. A., Keogh Dep., ex. 1.
- Purchase Order 2, dated November 26, 2001, for $1,432,417.84 in Jerusalem limestone products. Id., ex. 5.
- Purchase Order 3, dated July 22, 2002, for $241,800 in Jerusalem limestone

---

[1]The parties disagree as to whether Hindman was employed by Haifa, Inc. or Haifa New York, Inc.  See Pl. Opp. Br. at 3.

[2]The purchase orders bear the names of both Haifa, Inc. and Haifa New York.  See Keogh Ex. 1, 5, 7, 8.

products.  Id., ex. 7.

• Purchase Order 4, dated August 2, 2002, for $264,879 in Jerusalem limestone products.  Id., ex. 8.

Plaintiff subsequently made the following payments to a Haifa entity, as specified:

• December 4, 2000 check for $550,000, made out to Haifa. Regan Cert., ex. B, Corwin Dep., ex. 1.
• March 23, 2001 check for $150,000, made out to Haifa Stone. Id., ex. 2.
• July 31, 2001 check for $150,000, made out to Haifa. Id., ex. 3.
• December 22, 2001 check for $1,779,445.90, made out to Haifa New York, Inc. Id., ex. 4.
• August 22, 2002 check for $132,439.50, made out to Haifa Inc. Id., ex. 5.
• August 22, 2002 check for $120,900.00, made out to Haifa Inc. Id., ex. 6.

In sum, Plaintiff's purchase orders total $3,136,125.69 and Plaintiff paid $2,882.785.40[3]

to Defendants for Jerusalem Stone.

At some point, however, the relationship between the parties soured. On October 22,

2002, Plaintiff wrote to Corwin regarding Haifa's failure to deliver the products ordered and

demanded that Haifa deliver all of the products by May 15, 2003.  Regan Cert., ex. B, Corwin

Dep., ex. 8.  On December 10, 2002, Plaintiff held a meeting to discuss his construction project,

which was attended by Caesar Sanzaro, Jack Wright and Stewart Corwin,  among others.  Wright

Cert. ¶2; Sanzaro Cert. ¶8.  On January 21, 2003, Sean E. Regan, Esq., counsel for Plaintiff,

wrote to Corwin cancelling the purchase orders, stating that no further stone should be shipped,

and demanding a return of all deposits paid for products which had not been delivered.  Regan

Cert., ex. K.

Thereafter, Plaintiff filed a Complaint on February 20, 2003, alleging that Defendants

_____

[3]Plaintiff asserts that he paid $2,882,785.00, but based on the Court's calculations, this appears to be an arithmetic error, and the Court will use $2,882.785.40 as Plaintiff's total payment.

4

breached the agreement with Plaintiff.  Generally, Plaintiff contends that Defendants breached their agreement by failing to deliver all of the stone for which he paid and by delivering defective product.  Indeed, the parties agree that Haifa did not deliver all of the products that Plaintiff had ordered. For example, Corwin testified that Haifa did not deliver the cornice moldings.  Corwin Dep., 225-26, 230-31.  Moreover, the parties do not dispute that Plaintiff's payments on the first and second purchase order constituted payment in full for those orders; nor do the parties dispute that Plaintiffs made a 50% deposit on the third and fourth purchase orders.

However, the parties dispute the value of the material Plaintiff received.  Specifically, Plaintiff alleges that Defendants only spent $72,644 on raw materials and finished products to fill Plaintiff's orders, Pl's Br. at 9, and that he only received $1,290,140 worth of stone, id. at 10, comprising the $887, 940[4] worth of stone delivered from the first purchase order, Sanzaro Cert., ex. A, and $402,200 from the second purchase order.  Pl's Br. at 10.  Thus, Plaintiff contends that he is entitled to an award of $1,698,339 in damages which amounts to a refund of $1,592,645 plus $105,000 in cover damages.  Defendants, on the other hand, contend that there is no money due and owing to Plaintiff.  Regan Cert., ex. A, Haifa Resp. to Pl's Interrogatories, ¶ 16; Regan Cert., Ex. D., Corwin Resp. To Pl's Interrogatories., ¶¶ 13, 16.  Specifically, Defendants allege that they delivered $2,977,683.43 worth of stone to Plaintiff.  Defs' Opp. Br.

---

[4]The Court notes that the value assigned in the Wright Certification is $846,173.20, thus, the Court does not understand where the $887, 940.00 amount came from. If, indeed, Plaintiff arrives at this figure by adding back the $45,000 for labor to modify allegedly defective materials, i.e. $846,173.20, plus $45,000, the resulting value would be $891,173.20.  Pl's Br. at 10.  Absent any explanation, however, for purposes of this motion, the Court will use the number alleged by Plaintiff.

at 4[5].

Moreover, the parties dispute the reasons why the Defendants were not able to complete all of Plaintiff's purchase orders.  For example, Defendants contend that Plaintiff failed to provide timely shop drawings, engineering drawings and design information, that Plaintiffs failed to maintain proper supervision on the job site and that Plaintiff continually changed shop drawings and refused to sign change orders.  Corwin Interrogatory Response ¶ 12; see also, e.g., Corwin Dep. 213-217, 221.   In light of these issues, Defendants argue that their costs increased and they were unable to complete the production and delivery of stone; indeed, Defendants set forth a counterclaim for anticipatory breach alleging that Plaintiff owes them $348,633.89.

On the other hand, Plaintiff alleges, in relevant part, that Defendants made certain misrepresentations and omissions, prior to entering into the initial agreement and prior to each purchase order, which amount to fraud and consumer fraud[6].  In sum, Plaintiffs contend that the Haifa Defendants made the following alleged misrepresentations and omissions: (1) that they owned and controlled quarries and factories from which they would obtain and fabricate Plaintiff's stone. Pl's Third Amended Compl ("l's Third Compl.") Count 5, ¶¶ 8 &16; (2) that

_____

[5] Although Corwin's Interrogatory Response No. 16 contends that $2,377,683 worth of stone was delivered to Plaintiff, given the amount stated in Defendants' brief on this motion – $2,977,683.43, the Court understands the total value that Defendants allege they delivered to Plaintiff to be comprised of Corwin's figure plus $600,000 worth of stone that Defendants allegedly delivered to Plaintiff after Haifa was discharged.  Corwin Cert. ¶ 10.

[6] The Court notes that Plaintiff's papers, including the Third Amended Complaint, are littered with repetitious allegations concerning Defendants' alleged misrepresentations and omissions; however, the Court has attempted to summarize the alleged misrepresentations upon which Plaintiffs rely.  Indeed, the Court notes that the most succinct statement by Plaintiff concerning the allegedly fraudulent statement is contained in Plaintiff's Opposition to Defendants' Summary Judgment motion. See Pl's Opp. Br. at pp. 13-19.

they would use Plaintiff's deposit money and progress payments towards the purchase and fabrication of the stone, when, Plaintiff alleges they used this money for other expenses, id.¶ ¶9,10, 12, 14,15, 16; (3) that they concealed the payment of fees to EL designs, id. ¶¶ 11,13, 15, 16; and (4) that they failed to disclose their intent not to perform. Id. ¶¶ 9, 13.  In addition, Plaintiff alleges that Corwin made the following alleged misrepresentations and omissions: (1) Corwin did not disclose that he transferred Plaintiff's purchase order payments from Haifa NY to Haifa Inc. Pl's Opp. To Def's Mot. for SJ at 16; (2) he did not disclose to Plaintiff that Haifa NY was paying fees to EL Designs, id.; and (3) that he did not apply deposit money to purchase materials for Plaintiff and instead used money to pay corporate expenses. Id. at 16-17.

After filing the initial complaint, the parties engaged in lengthy litigation including the filing of three amended complaints, several motions to dismiss and discovery[7].  On June 5, 2006, Plaintiff filed the instant motion for partial summary judgment on the breach of contract claim against Haifa, the consumer fraud claim against Haifa and Corwin, and on the Defendants' anticipatory breach of contract counterclaim. On June 6, 2006, Defendants Haifa and Corwin filed a motion for summary judgment as to Plaintiff's fraud and consumer fraud claims against them.  The motions were held in abeyance as the parties engaged in Court-supervised settlement discussions. Following these unsuccessful conferences, at the request of the Defendants, based upon their alleged inability to pay counsel's fees, defense counsel moved to be relieved as counsel.  That motion was granted on February 8, 2007.  The parties' cross-motions for summary judgment, which had been fully briefed by counsel prior thereto, are now being decided.

---

[7]As the procedural history is well known to the parties, the Court will not rehash it at length in this background section.

7

## II.      Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir.2000).   In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.2002).  The Court's function "at the summary judgment stage... is not... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Id. at 252.

## III.     Discussion

## 1.      Breach of Contract

As discussed above, the parties entered into an oral agreement in 2000, pursuant to which Haifa would fabricate and deliver various custom stone products to Plaintiff for use in the construction of a residence.  Thereafter, the parties entered into four separate written purchase orders for the purchase of various custom products.  Plaintiff contends that each of these separate purchase orders constitutes an individual contract and that Haifa breached each agreement by

failing to deliver all of the products that Plaintiff ordered and by delivering defective products.

To prevail on a breach of contract claim, a plaintiff must prove that a valid contract exists, that the defendant materially breached the contract, and that the plaintiff suffered damages as a result of the breach. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F.Supp.2d 831, 833 (D.N.J.2006) (citing Coyle v. Englander's, 199 N.J.Super. 212, 223 (App.Div.1985)). In order for a valid contract to exist, the plaintiff must show mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization. Id. (citing Cohn v. Fisher, 118 N.J.Super. 286, 291 (Law Div.1972)).

In the instant matter, the Court finds that significant issues of material fact exist which preclude summary judgment on Plaintiff's breach of contract claim. To begin, although the parties do not dispute that Plaintiff and Haifa entered into an agreement pursuant to which Haifa was to provide Plaintiff with Jerusalem limestone products, there are issues of fact as to whether a single overarching contract governed the transaction or if the purchase orders constituted four individual contracts. Indeed, Plaintiff contends that the agreement at issue in this matter is comprised of four separate purchase orders; these purchase orders are as follows: (1) November 18, 2000 for $1,197,028.25; (2) November 26, 2001,for $1,432,417.84; (3) July 22, 2002 for $241,800; and (4) August 2, 2002 for $264,879.  Defendants, however, argue that the parties entered into an oral agreement in December 2000, pursuant to which Haifa was to furnish custom stone products for Plaintiff's residence.  Def's Statement of Undisputed Fact ("Fact St.") ¶10.[8] Regardless of which position controls, the parties also dispute virtually every aspect of their

---

[8] See discussion infra pp. 15-17.

agreement which terms cannot be resolved on this motion record.

Moreover, there are significant issues of fact as to the damages Plaintiff suffered as a result of the alleged breach.  In general, Plaintiff contends that the Defendants spent only $72,644 on raw materials and finished products to fill Plaintiff's orders, Pl's SJ Br. at 9, and that he only received $1,290,140 worth of stone.  Id. at 10.  To support his argument, Plaintiff relies on the Certifications of C.A. Sanzaro, Plaintiff's builder, and Jack Wright, Plaintiff's project coordinator, who valued the inventory of stone that Plaintiff received from the first purchase order at $846,173.20[9].  In addition, for the purpose of this motion, Plaintiff stipulates that he received $402,200 worth of stone from the second purchase order.  Thus, Plaintiff contends that he is entitled to an award of $1,698,339 in damages which amounts to a refund of $1,592,645 plus $105,000 in cover damages.

Defendants, on the other hand contend that there is no money due and owing to Plaintiff. Regan Cert., ex. A, Haifa Resp. to Pl's Interrogatories, ¶ 16; Regan Cert., ex. D., Corwin Interrogatory Resp. ¶¶ 13, 16.  Specifically, Defendants argue that they delivered $2,977,683.43 worth of stone to Plaintiff[10].  In support of this argument, Defendants rely on pull tickets to

---

[9]See supra fn. 4.

[10]See supra fn. 5 in which the Court notes that although Corwin's Interrogatory Response Number 16 contends that $2,377,683 worth of stone was delivered to Plaintiff, the Court understands the total value that Defendants allege they delivered to Plaintiff to be comprised of Corwin's figure plus $600,000 worth of stone that Defendants allegedly delivered to Plaintiff after Haifa was discharged.  Corwin Certification ¶ 10; Def's Opp. Br. at 4 ("the value of all the custom stone manufactured products. . . total $2,977,683.43.").  Moreover, although Plaintiff contends that Corwin's certification is a "sham affidavit", see Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004), because it contradicts prior written testimony, the Court does not agree. Indeed, Corwin's valuation is consistent with his interrogatory responses that no money is due and owing Plaintiff.  Moreover, to the extent that Plaintiff believes the valuation itself is a "sham", the Court need not decide this because other issues of fact, unrelated to the valuation, preclude a grant of

establish the amount of material they provided to Plaintiff before being discharged.  Corwin

Cert., ex. A.  Indeed, although Defendants concede that they did not deliver all the items set forth

in the purchase orders, see e.g., Corwin Dep., 225-26, 230-31, nonetheless, Defendants contend

that the value of the materials that they delivered is equal to or exceeds the amount that Plaintiff

paid.  Moreover, Defendants argue  that any breach on their part was due, in part, to the fact that

Plaintiff's requirements and orders continuously changed, making performance difficult.

Further, Defendants contend that the certifications of Sanzaro and Wright are incomplete and that

these certifications contain separate and distinct inventories.

At this juncture, the Court is faced with three distinct evaluations of the quantities and

type of products that were delivered to Plaintiff and, absent further explanation and testimony by

the parties, the Court is unable to reconcile these numbers.  Indeed, Plaintiff relies on the Sanzaro

and Wright Certifications to support the instant motion.   However, these certifications each

contain distinct inventories.  For example, the Sanzaro Certification provides an inventory of the

products received by Plaintiff and relies on the Wright accounting to establish the value of the

products, Sanzaro Cert., ¶ 5, pp. 3-5.  In contrast, although the Wright Certification contains the

same accounting as the Sanzaro Certification, it relies on a separate inventory of products

received by the Plaintiff.  Absent further explanation by the parties, however, the Court cannot

conclusively determine the products that Plaintiff received or the value of those products.

Indeed, the Court cannot discern whether the two inventories contain the same products or if they

contain an entirely different set of stones.

---

Summary Judgment on the breach of contract issue.

Moreover, this issue is further complicated by the pull tickets that Defendants attach to, and rely upon, in their papers.  See Corwin Cert., ex. B. For example, during his deposition, Corwin testified that the pull tickets "show all the material received and delivered. . . They list how many crates of material, what the container came in so you can refer to the packing list to see exactly what was in it, and, as you can see, these are delivered to the job site."  Corwin Dep. 97:1-13, 99:19-102.  However, not only do the pull tickets not contain any financial data, but the pull tickets create a third inventory of the products delivered to Plaintiff.   Thus, in comparing the pull tickets to the Sanzaro and Wright Certifications, the Court cannot discern what items were delivered to the Plaintiff or the value of those items.  For these reasons, the Court finds that there are issues of material fact that preclude summary judgment on Plaintiff's breach of contract claim.

## 2. Defendant's Counterclaim

In addition, Plaintiff asks this Court to dismiss Defendants' counterclaim for anticipatory breach.   In the counterclaim, Defendants contend that Plaintiff breached the parties' agreement by notifying Haifa in writing that he did not want any more stone shipped to him.  Defendants also claim that had Plaintiff not breached the contract, Defendants would have completed their obligations under the contract and would have earned a profit of $348,633.89.  Plaintiff, on the other hand, alleges that he did not anticipatorily breach the agreement with Haifa; rather, on June 21, 2003, Plaintiff cancelled his purchase orders with Haifa after Corwin had informed him on December 10, 2002, that Haifa could not perform under their agreement.  Defendants have not opposed Plaintiff's motion to dismiss their counterclaim nor have they addressed this

12

counterclaim in any manner.  Thus, this Court will consider Plaintiff's motion on Defendants' counterclaim to be unopposed.

If a non-movant fails to oppose a motion for summary judgment, Rule 56(e) provides that a court may grant the motion for summary judgment "if appropriate."  See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990); see also Damino v. Sony Music Entm't, 975 F.Supp. 623, 627 (D.N.J. 1996).  A motion for summary judgment is appropriately granted when that party is entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.  When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits, and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. Internal Revenue Serv., 2002 WL 373448, at *2 (D.N.J. 2002) (internal quotations and citations omitted).  Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, 1989 WL 17549, at *8 (E.D.Pa. 1989); see also Atkinson v. City of Phila., 2000 WL 793193, at *5 n.8 (E.D.Pa. 2000).

In the instant matter, because Defendants have not opposed this motion, they have failed to identify anything in the record that would support their claim that Plaintiff anticipatorily breached the contract.  Thus, the Court will accept as true all material facts set forth by Plaintiff with appropriate record support.  See Carp, 2002 WL 373448, at *2.  For example, the Wright and Sanzaro Certifications provide that at a December 10, 2002 meeting, Corwin told Plaintiff

that Haifa could not perform because they did not have the money to do so[11].  Wright Cert. ¶ 5;
Sanzaro Cert. ¶ 8.  Thereafter, Plaintiffs cancelled the agreement with Defendants.  In light of
Defendants' silence on this matter, there is no question of fact as to whether Plaintiff
anticipatorily breached the agreement. Thus, Plaintiff's motion for summary judgment on
Defendants' counterclaim is granted.

### 3.  Economic Loss Doctrine, Fraud and the Haifa Defendants

In addition to Plaintiff's claim for breach of contract, Count Three of Plaintiff's Third
Amended Complaint sets forth a claim for fraud and Count Five sets forth a claim for violation
of the New Jersey Consumer Fraud Act ("NJCFA").  Generally, Plaintiff's fraud claims allege
that Corwin and the Haifa Defendants made various misstatements and omissions in the course
of their transaction with the intent that Plaintiff would rely upon them. Plaintiff moves for
summary judgment on the consumer fraud claim against both the Haifa Defendants and Corwin.[12]
In addition, Defendants move for summary judgment on both fraud claims. Before reaching the
merits of these motions, however, the Court must address Defendants' argument that the
economic loss doctrine bars Plaintiff's fraud claims.

In general, the economic loss doctrine prohibits plaintiffs from recovering in tort
economic losses to which they are entitled only by contract. Saltiel v. GSI Consultants, Inc., 170

---

[11]Importantly, however, the Court notes that Corwin did offer to borrow money in order
to fabricate the remaining items from Plaintiff's purchase orders.

[12]Plaintiff's claims against Corwin are separately discussed. See infra pp. 17-22

N.J. 297, 310, 788 A.2d 268 (2002).  New Jersey courts have struggled with the viability of fraud claims to recover for purely economic loss.  <u>Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.</u>, 226 F.Supp .2d 557, 562 (D.N.J.2002). While New Jersey federal and state decisions have held that fraud claims may co-exist with a contract-based cause of action, there is a "conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do what he has promised."  <u>LoBosco v. Kure Eng'g Ltd.</u>, 891 F.Supp. 1020, 1032 (D.N.J.1995). Thus, federal courts in this district, as well as New Jersey state courts, have permitted fraud claims to proceed alongside a breach of contract when the claims arise out of fraud in the inducement or pre-contractual misrepresentations. <u>Bracco</u>, 226 F.Supp.2d at 563. Indeed, the "critical issue" is whether the conduct is "extraneous to the contract." <u>Id.</u> at 563. However, a mere "subsequent failure of the promisor to do what he has promised" is not recoverable in tort. <u>Id.</u>

In light of this standard, this Court may only consider the alleged misstatements and omissions made by Defendants prior to making an agreement with Plaintiff.  In other words, the Court will only consider Plaintiff's claims of fraud in the inducement; Plaintiff's claims for fraud that arose during the performance of the contract are barred by the economic loss doctrine. See <u>Bracco</u>, 226 F. Supp. 2d at 564.  Thus, this Court must initially determine whether the parties entered into one overarching agreement as Defendants allege or if the four separate purchase orders constituted individual contracts.  Indeed, if this Court were to find that there was one agreement, then it would only be proper to consider the allegedly fraudulent statements made prior to the 2000 agreement.  However, if the Court determined that each of the four purchase

orders constituted individual contracts, the Court could consider the allegedly fraudulent actions and statements made by the Defendants prior to the entry of each purchase order.

To begin, the Court notes that neither party briefed the legal issues surrounding whether the overarching oral agreement or individual purchase orders govern this transaction. Moreover, there are significant issues of material fact that preclude Summary Judgment. For example, despite Plaintiff's suggestion that each of the four purchase orders constituted a separate contract, Plaintiff does not cite to anything in the record, other than the purchase orders themselves, to support this theory. Moreover, the Court notes that although the third and fourth purchase orders contain the following pre-printed statement, "[o]nce quote becomes a Sales Order/Invoice it becomes a contract with Haifa Inc. And cannot be divided into smaller contracts," this statement is not printed on the first and second purchase orders. Instead, the first and second purchase orders contain the following pre-printed statement, "[w]e are please to submit the above quotation for your consideration. This quote is valid for 30 days. Thereafter it is subject to change without notice." Defendants, on the other hand, contend that "plaintiff entered into an agreement with Haifa in December 2000 for Haifa to furnish stone materials for the residence." Def's Fact. St. ¶11. Indeed, although the parties agree that there is no written documentation to memorialize this agreement, Plaintiff acknowledged the existence of an agreement and stated unequivocally that he relied on the representations made by the Defendants prior to entering the agreement. See Regan Cert., ex. I, Pl's Supplemental Interrogatory Resp. No. 3 ("There is no written document titled "contract" between the parties which is signed by the Plaintiff. Plaintiff accepted the written and verbal representations, promises and agreements of the Haifa Defendants."). Moreover, Plaintiff admitted that the documents attached to his supplemental

16

interrogatory responses, which include the purchase orders at issue in this matter, "represent the written culmination of the things Hindman promised that the Haifa Defendants would produce, and the price that Plaintiff would be charged." Id.  For all these reasons, the Court finds that there are issues of material fact concerning the existence and form of the contract.  Thus, the Court cannot determine whether the economic loss bars some or none of Defendants allegedly fraudulent misstatements or omissions.   Indeed, other than Hindman's representation about the quarry as discussed below, the Court need not reach the merits of whether the remaining statements by the Haifa Defendants' are actionable under the NJCFA because there are issues of material fact as to whether the economic loss doctrine would bar them regardless.  Thus, because the Court cannot determine what statements it may consider in deciding whether the Haifa Defendants engaged in fraud or violated the NJCFA, summary judgment on Plaintiff's fraud claims against the Haifa Defendants is not proper.

As mentioned above, the Court may properly consider Hindman's initial representation about Haifa's quarries and factories because these statements were clearly made at the outset of the parties' relationship; however, in light of the ambiguous nature of these statements, I find that there are issues of fact regarding these statements that preclude a grant of summary judgment. For instance, Plaintiff contends that Hindman "said that they had their own quarries and that he would be able to control the harvesting of the blocks because he could allocate a section of the quarry where the stone would be of a certain color consistence. . . He said that they – their milling company in Italy does all their milling and the blocks would be shipped from their quarry in Israel to their company in Italy, where they would be fabricated."  Vukovich Dep., 43:17- 44:7. In light of these statements, Plaintiff argues that the Defendants represented that they "owned

and controlled quarries where materials for Plaintiff's orders would be obtained, and that they owned or controlled factories. . . in Italy and Israel when in fact the Haifa Defendants owned no quarries or factories." Pl's Third Amended Compl., Count 5 at ¶ 8[13].   The Court, however, does not agree.  Indeed, the Court finds that Hindman's statements do not necessarily and unquestionably represent that Haifa "owns" quarries or factories as opposed to having access to certain quarries and fabricators, and, that standing alone, these statements are easily subject to different interpretations.  Because further testimony is needed to determine what Hindman actually said and what he intended to represent, summary judgment is inappropriate.

For all the reasons discussed above, the Court will deny Plaintiff's Motion for Summary Judgment on Count Five as to the Haifa Defendants and will deny Defendants' Motions for Summary Judgment as to the Haifa Defendants on Counts Three and Five.

### 4. **Fraud Claims Against Corwin**

Next, the Court must determine whether Summary Judgment is appropriate on Plaintiff's fraud claims against Corwin.  Specifically, Plaintiff moves for Summary Judgment on his consumer fraud claim against Corwin and Corwin moves for Summary Judgment on both the fraud and consumer fraud claims against him.

### I. Consumer Fraud (Count Five)

_____

[13] Moreover, the Court notes that even though there are questions of fact as to Hindman's representations regarding Haifa's quarries, Plaintiff has not attributed these statements to Corwin in any way and, in fact, Plaintiff has not set forth anything to show that Corwin was involved in making these statements. See discussion infra pp. 18-21.

18

The NJCFA provides, in relevant part, that "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.S.A. § 56:8-2. The NJCFA creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations. Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (1994). Affirmative acts of fraud require no showing of intent on behalf of the defendant. See Cox, 138 N.J. 2 at 17, 647 A.2d 454; Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378, 371 A.2d 13 (1977). See also Skeer v. EMK Motors, Inc., 187 N.J.Super. 465, 455 A.2d 508 (App.Div.1982). Thus, a defendant who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence or the intent to deceive. Strawn, 140 N.J. at 60, 657 A.2d 420. In contrast, when the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge, thereby making intent an essential element of the fraud.[14] See Cox, 138 N.J. at 18; Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522 (1991) (Stein, J. concurring).

In the instant matter, Plaintiff contends that the following acts and omissions, attributable

---

[14]Indeed, despite Plaintiff's assertion that for each of the three categories under the NJCFA, "intent is not an essential element," Pl's Opp. Br. at 26, Plaintiff has misstated the law. As discussed above, when an alleged consumer fraud consists of an omission, intent is an essential element of the fraud. Cox, 138 N.J. at 18.

to Corwin, are actionable for purposes of the NJCFA. First, Plaintiff contends that Corwin did

not disclose that he transferred Plaintiff's purchase order payments from Haifa NY to Haifa Inc.

Pl's Opp. To Def's Mot. for SJ at 16. Next, Plaintiff contends that Corwin did not disclose to

Plaintiff that Haifa NY was paying fees to EL Designs. Id.  Finally, Plaintiff alleges that Corwin

did not apply deposit money to purchase materials for Plaintiff and instead used the money to pay

corporate expenses. Id. at 16-17.

  To begin, the Court notes that Plaintiff had limited contact with Defendant Corwin.

Indeed, until the first two purchase orders were entered, Plaintiff's contact with the Haifa

Defendants was limited to interactions with Hindman.  Subsequently, when problems began to

arise, Plaintiff spoke with Corwin on two occasions and had one face-to-face meeting with

Corwin.  Vukovich Dep., 96, 98.  Specifically, Plaintiff testified that he had a conversation with

Corwin in 2001 during which Corwin explained the supply problems that Haifa was having

because of disturbances in the Middle East.  Id. 102-103.  In addition, Plaintiff testified that he

had another conversation with Corwin in December 2002, prior to their face-to-face meeting.  Id.

104.  Importantly, at the time that Plaintiff conversed with Corwin, Plaintiff had already entered

into the initial agreement with Haifa for the purchase of stone and had agreed to at least two

purchase orders.  Thus, it is unclear whether Corwin's statements are even susceptible to a claim

of fraud in the inducement because Plaintiff had already agreed to the bulk of his purchase of

stone from the Defendants at the time Corwin allegedly failed to disclose certain facts.

  Moreover, and more importantly, I find that the alleged "statements" by Corwin upon

which Plaintiff relies are not actionable under the NJCFA.  To begin, the Court notes that the

"statements" upon which Plaintiff relies are best characterized as omissions; indeed, each of the

statements upon which Plaintiff relies describes something that Corwin failed to disclose – i.e. that he transferred the payments to another Haifa entity, that he used the payments to pay EL Designs or that he used the money to pay corporate expenses[15].  Thus, for Plaintiff to succeed under the NJCFA for Corwin's alleged omissions, Plaintiff must prove scienter.  Chattin, 591 A.2d at 947 (Stein J., concurring).  In other words, Plaintiff must prove that Corwin acted with the intent to deceive.  See Cox, 138 N.J. at 17 ("when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud.")  Based on the record before me, however, Plaintiff has not put forth any evidence to show that Corwin's actions were made with knowledge or the intent to deceive[16].  In fact, Plaintiff directed checks to the various Haifa entities and never questioned the significance thereof.

Moreover, in light of the fact that Defendants continued to produce custom products for Plaintiff pursuant to the purchase orders, Plaintiff is hard pressed to show that Corwin made the

---

[15]As discussed in footnote 13, Plaintiff has not attributed Defendants' alleged statements regarding Haifa's ownership of quarries or factories to Corwin nor has Plaintiff set forth anything that would show Corwin's involvement in these statements. Thus, Summary Judgment is appropriate for Corwin on the statements made regarding the quarries.

[16]The record also raises questions as to whether any of the alleged omissions would even rise to the level of materiality. For example, Plaintiff contends that Corwin did not disclose that he transferred Plaintiff's purchase order payments from Haifa NY to Haifa Inc. Pl's Opp. To Def's Mot. for SJ at 16. However, Plaintiff does not suggest the relevance or importance of this alleged omission particularly when Plaintiff, himself, made payments to both entities at various times. See supra p. 4. Similarly, Plaintiff contends that Corwin did not disclose to Plaintiff that he used some of Plaintiff's money to pay fees to EL Designs or to pay corporate expenses. Again, Plaintiff has not established the relevance of this information; surely, as a business person, Plaintiff understands that corporations exist to make profits and that corporations pay for overhead costs with money received from their various customers and through business transactions.

above statements with intent to deceive. Indeed, at the December 10, 2002 face-to-face meeting, just weeks before Plaintiff ended the contract, Corwin offered to borrow money to guarantee delivery of the stone, Wright Cert., ex. A, and offered to help Sanzaro secure the materials necessary to complete the fabrication of stone for Plaintiff's residence. Sanzaro Cert. ¶8. For these reasons, and in the absence of anything in the record that would establish that Corwin had the intent to deceive Plaintiff, this Court will grant Corwin's Motion for Summary Judgment as to the Consumer Fraud claim against him.

Moreover, to the extent that Plaintiff suggests that this Court should "pierce the corporate veil' and hold Corwin liable for Haifa's alleged fraudulent actions, the Court does not agree. Indeed, it is well established that " the essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort. A predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 308 (2002). In the instant matter, the record does not establish that Corwin was substantially involved in the allegedly fraudulent actions of the corporation. Indeed, as discussed above, Corwin only become involved near the end of the relationship and there is nothing to suggest that Corwin was involved in the Defendants' allegedly fraudulent acts.

Furthermore, to the extent that Plaintiff suggests that Corwin "had a duty not to lie and misrepresent material facts. . . .a duty not to omit to disclose material facts. . . .a duty not to transfer Plaintiff's deposits from the corporate entity. . . .a duty not to act in an unconscionable way," Pl's Opp. Br. at 37, the Court notes that these are not the duties to which the Saltiel court

referred.  Indeed, the Saltiel court held that to succeed on a tort action, Plaintiff must establish an independent duty of care separate and apart from the contract between the parties, "[f]or example, a physician is required to act with a 'degree of care, knowledge, and skill ordinarily possessed and exercised' in analogous situations by the average member of the medical community. . .In addition, the law imposes duties on attorneys. . .Similar duties also are imposed on insurance brokers." Saltiel, 170 N.J. at 315-317.  Here, Plaintiff has not set forth anything in the record to establish the existence of an independent duty of care on the part of Corwin.  Thus, the Court will not "pierce the corporate veil" to hold Corwin liable and the consumer fraud claims against him are dismissed.

### ii. Common Law Fraud (Count Three)

Finally, Plaintiff contends that Corwin's alleged misstatements and omissions amount to common law fraud.  Defendants move for summary judgment on the common law fraud claims against Corwin.   The Court will grant Defendants' motion as to Corwin.

To succeed on a claim for fraud in New Jersey, a Plaintiff must establish the following five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  Wartsila NSD North America, Inc. v. Hill Intern., Inc., 342 F. Supp. 2d 267, 287-88 (D.N.J. 2004) (citing Gennari v. Weichert Realtors, 691 A.2d 350, 367 (1997)). Under New Jersey law, a fraud claim that is based on an alleged misrepresentation that a party will perform a contract requires a showing, at the time the promise to perform was made, that there was no intent to fulfill the promise.  Lightning

Lube, Inc. v. Witco Corporation, 4 F.3d 1153, 1186 (3d Cir. 1993).  Mere proof of

nonperformance does not prove a lack of intent to perform.  Id.  (quoting Stochastic Decisions,

Inc. v. DiDomenico, 565 A.2d 1133, 1137 (App. Div. 1989)).

       To begin, as discussed above, the economic loss doctrine bars claims for fraud in the

performance; thus, this Court can only consider Plaintiff's claim for fraud in the inducement.  In

the instant matter, the record does not establish that Corwin made any material

misrepresentations or omissions, that he intended Plaintiff to rely upon them or that Plaintiff

actually did rely on these statements.  Indeed, the undisputed facts show otherwise.  For example,

Plaintiff does not suggest that Corwin made any representations regarding Haifa's ownership of

quarries.  See supra fn.15.  In addition, the Haifa Defendants continued to provide custom

products to Plaintiff pursuant to the purchase orders.  Moreover, at the December 10, 2002

meeting, just weeks before being discharged by Plaintiff, Corwin offered to borrow money to

guarantee delivery of the stone, Wright Cert., ex. A, and offered to help Sanzaro secure the

materials necessary to complete the fabrication of Plaintiff's residence.  Sanzaro Cert., ¶8.  Thus,

Plaintiff has not established an issue of fact as to whether Corwin acted with intent; indeed,

based on the record before me, Corwin appears to have intended to follow through with

Plaintiff's project.   For these reasons, the Court will grant summary judgment to Corwin on the

common law fraud claim against him.

## IV. Conclusion

       For the reasons set forth above, I will grant in part and deny in part both Plaintiff's and

Defendants' Motions for Summary Judgment.  Specifically, Plaintiff's motion on the breach of contract claim and the consumer fraud claims against the Haifa Defendants is denied; however, I will grant Plaintiff's motion to dismiss Defendants' counterclaim.  In addition, Defendants' motion for Summary Judgment on the fraud and consumer fraud claims against the Haifa Defendants is denied; however, Defendants' motion on the fraud and consumer fraud claims as to Corwin is granted. An appropriate order will follow.


Dated: February 28, 2007                                    /s/ Freda L. Wolfson
                                                            Honorable Freda L. Wolfson
                                                            United States District Judge